**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICOLE J. CASTRO, | ) | CASE NO. 3:20-cv-02259 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Comm'r of Soc. Sec.,* | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Nicole J. Castro (Plaintiff), challenges the final decision of Defendant Kilolo

Kijakazi, Acting Commissioner of Social Security (Commissioner),[1] denying her applications

for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§

416(i), 423, 1381 *et seq*. (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For

the reasons set forth below, the Commissioner's final decision is AFFIRMED            .

**I. Procedural History**

On February 5, 2019, Plaintiff applied for DIB, alleging a disability onset date of January

30, 2019. (R. 12, Transcript (Tr.) 155-56). The application was denied initially and upon

reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).

(Tr. 63-107). Plaintiff participated in the hearing on May 7, 2020, was represented by counsel,

and testified. (Tr. 40-62). A vocational expert (VE) also participated and testified. *Id*. On May

---

[1]  Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a
party." Fed.R.Civ.P. 25(d).

28, 2020, the ALJ found Plaintiff not disabled. (Tr. 27). On August 31, 2020, the Appeals

Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became

the Commissioner's final decision. (Tr. 1-6). Plaintiff's complaint (R. 1) challenges the

Commissioner's final decision, and the parties have completed briefing. (R. 14 & 16).

Plaintiff asserts the following assignments of error: (1) the ALJ erred by relying upon

medical opinions rendered before she was hospitalized on four separate occasions due to mental

health disturbances, and (2) the ALJ improperly relied upon Plaintiff's abilities before the

alleged onset date to determine she could perform past relevant work. (R. 14).

## II. Evidence

### A. Relevant Medical Evidence[2]

#### 1.  Treatment Records

"Hospitalization 1" — On December 23, 2019, Plaintiff presented to the hospital due to

suicidal ideation for months. (Tr. 424). Plaintiff stated "she was going to inject herself with her

husband's insulin but he came home in time." *Id*. Plaintiff was "stressed about her work and

financial problems." *Id*. A mental status exam described Plaintiff as alert and disoriented; her

mood, affect, behavior, thought content, and judgment were all described as normal. (Tr. 426).

She endorsed experiencing auditory hallucinations. (Tr. 427). The next day, she reported anxiety

as a six on a ten-point scale, and denied suicidal thoughts at the time of the assessment. (Tr. 430).

She denied hearing voices at that time. *Id*. She reported taking Xanax for anxiety attacks, but

running out after her doctor retired. (Tr. 436). Another mental status evaluation identified

---

[2]  The recitation of the evidence is not intended to be exhaustive. It focuses on Plaintiff's mental health impairments given the nature of Plaintiff's assignments of error. In addition, as the briefs are largely accurate, the recitation focuses on the various opinions concerning Plaintiff's mental health impairments and the hospitalizations identified in Plaintiff's brief.

psychomotor agitation; anxious mood; circumstantial, concrete and tangential thought process; fair insight/judgment; and grossly intact cognition. (Tr. 439-440). The plan was to restart her medications and pursue individual and group psychotherapy. (Tr. 440). She was discharged after two days on December 25, 2019. (Tr. 446).

"Hospitalization 2"— On January 7, 2020, Plaintiff reported to the hospital's emergency department reporting that she was hearing voices, having feelings of self-harm, and "outside stressors include [her] Landlord and her six children recently moved in with [Plaintiff]" and her husband a few weeks earlier. (Tr. 376-77, 379). She again reported thinking of harming herself with her husband's insulin. (Tr. 377). On mental status exam, Plaintiff was tearful, depressed, oriented x 3, and had normal behavior. (Tr. 379). The next day, on mental status examination, Plaintiff had psychomotor agitation; pressured speech; depressed mood; circumstantial, concrete, and tangential thought process; normal and concrete thought contact; grossly intact cognition; impaired insight; and limited judgment. (Tr. 391). On the morning of January 9, 2020, she denied anxiety or suicidal thoughts. (Tr. 399). She again denied such symptoms the next day, but reported quieter auditory hallucinations. (Tr. 407). Plaintiff was discharged on January 11, 2020. (Tr. 413). Nan E. Nelson, M.D., noted that Plaintiff's mood "subsequently improved after restarting medications and attending groups" (Tr. 414).

"Hospitalization 3"— On March 23, 2020, Plaintiff went to a hospital emergency room (ER) at the suggestion of nurse practitioner Kathy Rubel with complaints of worsening anxiety and wanting to take her life. (Tr. 652). Plaintiff was tearful, made poor eye contact, was not hallucinating or delusional, and expressed some suicidal thoughts; she was admitted to the Coping Center. (Tr. 655). She reported that she and her husband lost their jobs due to Covid-19. (Tr. 664). Pursuant to mental status examination on March 24, 2020, Plaintiff had no

psychomotor agitation; normal speech; "ok" mood and flat affect; limited judgment, reliability, and impulse control; fair insight; and linear, logical, coherent, and goal-directed thought process. (Tr. 671). She was diagnosed with bipolar 1 disorder, chronic post-traumatic stress disorder (PTSD), panic attacks with agoraphobia. (Tr. 671, 673). The plan was to again restart Plaintiff on "outpatient meds" and increase the dosage of Latuda, which Plaintiff preferred. (Tr. 672). Plaintiff was discharged after two days on March 25, 2020. (Tr. 673).

"Hospitalization 4"— On March 30, 2020, police officer Potts responded to a call from Plaintiff's husband indicating Plaintiff had attempted to set herself on fire and then left the residence stating she was going to take her own life. (Tr. 261). That same day, treatment notes from the ER indicate that Plaintiff denied being suicidal, stating her husband was lying as she was trying to leave him. (Tr. 642). Plaintiff was tearful and refused to be admitted to the Coping Center. *Id*. On mental status examination, Plaintiff had normal attention and perception; depressed mood; normal speech and behavior; her thought content included suicidal ideation and plan but was not paranoid or delusional; cognition, memory, and judgment were all normal. (Tr. 645).

On April 2, 2020, Plaintiff had a telephonic psychiatric appointment with Cathy J. Rubel, APRN-CNP. (Tr. 693). On mental status examination, Plaintiff followed the content of the interview without difficulty; her mood was depressed and affect was congruent to mood; and speech was normal. *Id*. After complaints that Plaintiff's Latuda medication made her nauseous (Tr. 693), Plaintiff was prescribed Geodon. (Tr. 697).

On May 5, 2020, Plaintiff reported that she was "doing okay" and "feeling much better with the Geodon." (Tr. 685). On mental status examination, nurse Rubel observed that Plaintiff was cooperative and alert; followed the interview without difficulty; had a good, "steady" mood and

affect congruent to mood; and normal speech. *Id*. She had logical thought process and no temper or memory problems. (Tr. 686). She had no suicidal intention or plan. *Id*.

"Hospitalization 5"— The ALJ rendered the underlying decision in May 2020. According to records attached to Plaintiff's brief, in August of 2020 her husband took his life, and on October 8, 2020, Plaintiff presented to the ER reporting she was very suicidal and wanted to shoot herself. (R. 14-1, PageID# 788; Exh. 1). Two days later, she was "still quite depressed, despondent, overwhelmed, and having infrequent suicidal thoughts. Affect remains flat and poorly reactive. Patient has been withdrawn and isolative." (R. 14-1, PageID# 810). On October 14, 2020, Plaintiff was discharged. (R. 14-1, PageID# 821). Plaintiff had reported struggling with the recent death of her husband, being unable to work, stress due to Covid-19, and having to move in with her mother and stepfather. *Id*. According to the medical records, her medications Lamictal and Geodon were adjusted and "optimized" without side effects. *Id*. At the time of discharge, Plaintiff denied any suicidal ideation or plans, and denied any auditory or visual hallucinations. *Id*.

## 2.  Medical Opinions Concerning Plaintiff's Functional Limitations

On April 16, 2019, Plaintiff was seen by consultative psychologist, Christopher C. Ward, Ph.D., "to assess level of mental status as it relates to a claim for disability benefits due to a psychological condition." (Tr. 307). Plaintiff reported that she works about 15 hours per week for a "cat sitting company" where she "set[s] up the clients," but that her "seizures started becoming a big problem." (Tr. 307-308). Plaintiff reported that she was not being treated by a mental health professional. (Tr. 309). She reported often letting her grooming and hygiene lapse due to limited motivation, difficulty grocery shopping due to anxiety, and difficulty concentrating when cooking. (Tr. 310). On mental status examination, Dr. Ward observed that

Plaintiff had adequate grooming and hygiene, normal speech and thought process, conversational speed, no indications of depression or anxiety, and intellectual functioning within normal limits. (Tr. 310-11). Dr. Ward concluded that Plaintiff's performance on a "brief word reasoning task" did not suggest any difficulty following instructions and that her performance on a "brief short term memory task" did not suggest difficulty remembering instructions. He also concluded that she "adequately completed tasks which assessed attention" and that her "persistence and pace were adequate." (Tr. 312). Dr. Ward concluded Plaintiff did not show "significant indications of mental health difficulties" that would "clearly impact interaction in work settings." *Id*.

On May 5, 2019. State Agency psychologist, Audrey Todd, Ph.D., reviewed the evidence of record and indicated that while Plaintiff's depressive, bipolar and related disorders were "severe," she had only moderate difficulties in concentrating, persisting, or maintaining pace, and mild difficulties in understanding, remembering, or applying information; interacting with others; and adapting or managing oneself. (Tr. 71-72). Dr. Todd indicated the evidence did not establish the presence of "C Criteria." (Tr. 72). Dr. Todd opined Plaintiff "retains the ability to complete 3-4 step tasks that do not require prolonged periods of concentration or maintain a strict production quota;" and she "retained the ability to respond to changes that are explained" and where she can "ask questions until she becomes familiar." (Tr. 76-77).

On August 18, 2019, a second State Agency physician, Karla Delcour, Ph.D., reviewed the evidence and determined that the more recent evidence was consistent with and supported Dr. Todd's findings. (Tr. 89, 93-94).

6

**B. Relevant Hearing Testimony**[3]

During the May 7, 2020 hearing, the VE classified Plaintiff's past work, based on Plaintiff's own testimony, as follows: (1) assembler small products, Dictionary of Occupational Titles (DOT) 739.687-030, light exertional with an SVP of 2, but sedentary as actually performed, and (2) home attendant, DOT 354.377-014, medium exertional with an SVP of 2, semi-skilled, and possibly heavy exertional as performed. (Tr. 56).

In addition, the ALJ posed the following hypothetical question to the VE during the hearing:

> Please assume that a hypothetical individual the same age, education and work experience as the claimant who can work at the light exertional level. Postural limitations of no climbing ladders, ropes, and scaffolds. Environmentally, avoid all exposure to hazards such as dangerous moving machinery and unprotected heights. Work limited to simple, routine, repetitive tasks in a work environment free from fast-paced production requirements such as moving assembly lines and conveyor belts involving few, if any, workplace changed [sic]. Occasional interaction with coworkers, supervisors, and the public.

(Tr. 56-57). The VE testified that such an individual retained the ability to perform Plaintiff's past work as an assembler of small parts. (Tr. 57). In addition, such an individual could also perform the following jobs: inspector hand packager, DOT 559.687-074, light, unskilled with an SVP of 2 (139,000 jobs nationally); mail clerk, DOT 209.687-026, light, unskilled with an SVP of 2 (145,000 jobs nationally); and assembler electrical accessories, DOT 729.687-010, light, unskilled with an SVP of 2 (240,000 jobs nationally). (Tr. 57).

The ALJ posed a second hypothetical that included all the same limitations but with a sit/stand option. (Tr. 57-58). The VE testified that such an individual retained the ability to

---

[3]  Because Plaintiff has not raised any error with respect to the ALJ's credibility determination, the court foregoes any recitation of Plaintiff's hearing testimony.

perform Plaintiff's past work as an assembler of small parts. (Tr. 58). According to the VE's testimony, such an individual could also perform the previously identified positions of a mail clerk and a hand packager, and could also perform the job of an electronics worker, DOT 726.687-010, light, unskilled with an SVP of 2 (244,000 jobs nationally). *Id*. The VE indicated these were only examples and that additional jobs would exist. *Id*.

The ALJ posed a third hypothetical that maintained all the same limitations but at the sedentary exertional level. (Tr. 58). The VE testified that such an individual retained the ability to perform Plaintiff's past work as an assembler of small parts as she performed it but not as it is generally performed. *Id*. In addition, such an individual could also perform the following jobs: patcher putting together electrical components, DOT 723.687-010, sedentary, unskilled with an SVP of 2 (182,000 jobs nationally); inspector touch-up screener, DOT 726.684-110, sedentary, unskilled with an SVP of 2 (158,000 jobs nationally); and machine tending bonder, DOT 726.685-066, sedentary, unskilled with an SVP of 2 (110,000 jobs nationally). (Tr. 59).

In response to a final hypothetical from the ALJ, the VE testified that an individual who would be off-task more than 15 percent of the workday would be unemployable. *Id*. Except for the testimony concerning the sit/stand option and the off-task limitations, the VE indicated her testimony was consistent with the DOT. (Tr. 60).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2.    The claimant [has] not engaged in substantial gainful activity since January 30, 2019, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.    The claimant has the following severe impairments: seizures; herniated disc /spinal stenosis; obstructive sleep apnea; morbid obesity; major depressive disorder/bipolar disorder; anxiety/panic attacks, with agoraphobia; cluster B personality traits; and posttraumatic stress disorder (PTSD). (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: allowed to sit or stand alternating position for one or two minutes in the immediate vicinity of the workstation, no more frequently than every 30 minutes. Postural limitation of no climbing of ladders, ropes, or scaffolds. Environmental limitation to avoid all exposure to hazards, such as dangerous moving machinery and unprotected heights. Work limited to simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work related decisions, with few if any work place changes. Occasional interaction with the general public, coworkers, and supervisors.

6.    The claimant is capable of performing her past relevant work as a small products assembler as she actually performed it. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from January 30, 2019, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 12-13, 16, 25, 27).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is

supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v.*

*Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

**1. Impact of Four Hospitalizations on the Listings Level Determination**

In the first assignment of error, Plaintiff asserts that the ALJ's finding—that the criteria of Listings 12.04, 12.06, and 12.15 were not satisfied—was not supported by substantial evidence in light of four hospitalizations that occurred after the State Agency consultants rendered their opinions. (R. 14, PageID# 779-781).

The pertinent Social Security Administration federal regulations state that at the third step in the disability evaluation process, a claimant is considered disabled if their impairment(s) "meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement." *See* 20 C.F.R. § 404.1520(a)(4)(iii). The Listing of Impairments sets forth those

impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a). Therefore, an individual who meets the requirements of a Listed Impairment in conjunction with the durational requirement is deemed conclusively disabled.

Each individual listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). It is Plaintiff's burden to "show that his condition meets or equals one of the listed impairments." *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). A claimant must satisfy *all* of the criteria to "meet" the listing. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (*citing* 20 C.F.R. § 404.1525(c)(3)). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A claimant is also disabled if their impairment is the medical equivalent of a listing, 20 C.F.R. § 404.1525(c)(5), which means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

The ALJ should discuss a relevant listing "where the record raises 'a substantial question as to whether [the claimant] could qualify as disabled' under a listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. App'x 426, 432 (6th Cir. 2014) (*citing Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). Although an ALJ errs when no reasons are provided to support a finding that a specific listing was not met where the claimant had put forward sufficient evidence to meet the listing, *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414-15 (6th Cir. 2011), such error is subject to harmless error analysis where the claimant "has not shown that his impairments met or medically equaled in severity any listed impairment." *Forrest v. Comm'r of Soc. Sec.*, 591

Fed. App'x 359, 366 (6th Cir. 2014).

Here, Plaintiff fails to develop any meaningful argument that raises a "substantial question" as to whether she could qualify as disabled under Listings 12.04, 12.6, and 12.15, as she makes no attempt to compare the criteria of those Listings with the evidence of record.[4] Rather, as this court understands Plaintiff's argument, Plaintiff believes the ALJ was precluded from relying upon the opinions of either the State Agency psychologists or the consultative examiner because there were four mental health based hospitalizations that post-dated their opinions rendering those opinions, in Plaintiff's words, "untenable and stale." (R. 14, PageID# 780). In such a scenario, Plaintiff believes that the ALJ was required to order a new consultative exam pursuant to Social Security Ruling (SSR) 96-6p, and Plaintiff continues that the ALJ's failure to do so constitutes reversible error.[5] Id.

_____

[4] Because Plaintiff has failed to develop an argument identifying any error concerning the ALJ's lengthy discussion of Listings 12.04, 12.06, and 12.15 (Tr. 15-16), the court deems any error waived. See McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); accord Meridia Prods. Liab. Litig. v. Abbott Labs., 447 F.3d 861 (6th Cir. May 11, 2006); Moore v. Comm'r of Soc. Sec., 573 Fed. App'x 540, 543 (6th Cir. 2014) (finding the argument that ""the ALJ failed to properly weigh the medical opinions of [her] treating physicians and psychiatrists" by "refusing to give [those opinions] ... controlling weight," was waived where the brief "does not elaborate or provide any further development of the argument").

[5] Even Plaintiff's reference to SSR 96-6p is undeveloped, as it does not identify which portion of the ruling supports the stated contention. (R. 14, PageID# 780). In the absence of a specific citation, the court construes Plaintiff's argument as referring to the passage: "an [ALJ] and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances … [w]hen additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." Titles II and XVI: Consideration of Administrative Findings of Fact By State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists At the Administrative Law Judge and Appeals Council, 1996 WL 374180, at *4.

13

As correctly pointed out by the Commissioner, SSR 17-2p "rescinds and replaces SSR 96-6p." 82 Fed. Reg. 15263-02, 2017 WL 1105349 (Mar. 17, 2017). (R. 16, PageID# 838). Courts in this circuit have noted that "the Social Security Administration has clarified that an ALJ is not required to obtain a medical expert's opinion [under SSR 17-2p] before making a finding that an individual's impairments do not meet or equal a listing impairment." *Marvin v. Comm'r of Soc. Sec.*, No. 1:17-cv-330, 2018 U.S. Dist. LEXIS 150107, at *26 (W.D. Mich. Aug. 10, 2018); *see also Holmes v. Comm'r of Soc. Sec.*, No. 1:17-cv-1648, 2018 WL 3544902 (N.D. Ohio July 24, 2018) ("the ALJ is not required to obtain medical expert evidence regarding equivalence [under SSR 17-2p] if … the ALJ 'believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment[.]'") (Lioi, J.).

In the case at bar, to the extent Plaintiff believes that the ALJ needed to obtain an updated opinion on her mental impairments in light of certain hospitalizations post-dating the State Agency opinion, that contention finds no support in SSR 17-2p, as the ALJ found that the severity of Plaintiff's mental impairments did not meet the listing criteria. *Cf. Gordon v. Comm'r of Soc. Sec.*, No. 18-cv-14062, 2020 WL 704885 (E.D. Mich. Feb. 12, 2020) ("To the extent Gordon argues the ALJ needed to obtain an updated opinion on CJZ's asthma, that contention is not supported by SSR 17-2p … either since the ALJ also found that the severity of CJZ's asthma did not meet the listing criteria."). An identical argument was rejected by another district court in this circuit.

> There are several problems with Helton's argument. Most significantly, Helton relies solely on SSR 96-6p, 1996 SSR LEXIS 3 for her argument, and as the Commissioner points out in response, SSR 96-6p, 1996 SSR LEXIS 3 was not in effect at the time the ALJ issued her decision. As the Commissioner explains, SSR 17-2p, 2017 SSR LEXIS 2, effective March 27, 2017 (seven months prior to

the ALJ's decision in this case), "rescinds and replaces SSR 96-6p, 1996 SSR LEXIS 3" in providing "guidance on how adjudicators [ ] make findings about medical equivalence." SSR 17-2p, 2017 SSR LEXIS 2, *1, 2017 WL 3928306, at *1 (Mar. 27, 2017). Under SSR 17-2p, 2017 SSR LEXIS 2, "[i]f an adjudicator believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, we do not require the adjudicator to obtain ME evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment." 2017 SSR LEXIS 2, *10, [WL] at *4. SSR 17-2p, 2017 SSR LEXIS 2 further states, "If an adjudicator [ ] believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) does not medically equal a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." *Id*. Here, the ALJ made such a finding. (Tr. 13). This alone is sufficient grounds to reject Helton's argument.

Moreover, although Helton suggests error at Step Three because of recent medical evidence added to the record, she does not identify any particular listing she believes she met. Nor does she argue that the ALJ inadequately considered any of the recent evidence when making her Step Three finding. At any rate, the ALJ's full decision reveals she did consider the recent evidence, through 2017, when making her decision. Here, the ALJ explained in detail, at Step Three, why the evidence did not meet or medically equal a listed impairment, far exceeding SSR 17-2p, 2017 SSR LEXIS 2's requirements.

*Helton v. Berryhill*, No. 18-11440, 2019 U.S. Dist. LEXIS 138989, at **10-12 (E.D. Mich. May 31, 2019). Here too, the ALJ set forth a lengthy and detailed analysis explaining why the evidence did not meet or equal Listings 12.04, 12.06, and 12.15. (Tr. 14-16), In addition, the ALJ clearly did not ignore the evidence of the four hospitalizations—that pre-date the ALJ's decision and are referenced in Plaintiff's brief—as they were explicitly discussed in the ALJ's decision. ("Hospitalization 1" discussed at Tr. 20-21; "Hospitalization 2" discussed at Tr. 21; "Hospitalization 3" discussed at Tr. 21; and "Hospitalization 4" discussed at Tr. 21-22).

Plaintiff has not demonstrated that the ALJ's discussion of the disputed listings was undermined by the four subsequent hospitalizations, and her statement that the findings of the

consultative examine and State Agency psychologists were untenable is nothing more than a statement of Plaintiff's own lay opinion. Again, Plaintiff's brief fails to discuss the various requirements of the listings at issue and why she believes *all* the requisite factors were present for *at least 12 consecutive months*. Moreover, even if the evidence cited by Plaintiff was capable of supporting a finding that the Listing was satisfied, Plaintiff has not demonstrated that the evidence would be so one-sided that the ALJ could not have found differently with respect the Listings. *See Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) ("Our role is not to resolve conflicting evidence in the record…") As stated above, a decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### 2. Sentence Six Remand

Without any meaningfully developed legal argument, Plaintiff asserts that her "fifth" hospitalization in October of 2020, which post-dated the ALJ's decision by over four months, relates back to the severity of her impairments during the adjudicated period. (R. 14, PageID# 781).

The party seeking remand bears the burden of showing that a remand is proper under Section 405. *Sizemore v. Sec'y of HHS*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver v. Sec'y of HHS*, 804 F.2d 964, 966 (6th Cir. 1986). Section 405 provides:

> The court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g). In this context, the party seeking remand must show: (1) the additional evidence is new and material, and (2) that she had good cause for her failure to incorporate it into the record

16

during the administrative proceeding. *Oliver*, 804 F.2d at 966. Evidence is "new" only if it was "'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). "Evidence is material when it concerns the claimant's condition prior to the ALJ's decision and there is a reasonable probability that the ALJ would have reached a different decision if the evidence had been presented." *Langford v. Astrue*, No. 1:09CV1629, 2010 WL 3069571, at *5 (N.D. Ohio Aug. 3, 2010) (citing cases); *see also Foster*, 279 F.3d at 357 (quoting *Sizemore*, 865 F.2d at 711); *Hamilton v. Astrue*, No. 1:09CV260, 2010 WL 1032646, at *5 (N.D. Ohio Mar. 17, 2010) (citing *Oliver*, 804 F.2d at 966).

"Evidence is not material if it is cumulative of evidence already in the record, or if it merely shows a worsening condition after the administrative hearing." *Kinsley v. Berryhill*, 2018 WL 3121621, 2018 U.S. Dist. LEXIS 45611, at *47 (N.D. Ohio Jan. 24, 2018) (internal citations and quotations omitted). The Sixth Circuit has observed as follows:

> Evidence which reflected the applicant's aggravated or deteriorated condition is not relevant because such evidence does not demonstrate the point in time that the disability itself began. Reviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition. If in fact the claimant's condition had seriously degenerated, the appropriate remedy would have been to initiate a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment.

*Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988).

While the evidence is undoubtedly new to the extent the records post-date the ALJ's decision, as stated above, Plaintiff's brief contains no real argument aside from the conclusory statement that the records relate back. (R. 14, PageID# 781). Plaintiff has failed to establish that the records in question are material to her condition *before* the ALJ's decision, rather than a worsening in her mental state following her husband's passing *after* the hearing and ALJ's decision. To the extent the

17

records are merely cumulative of the first four hospitalizations that predate the hearing, then the

October 2020 hospitalization is cumulative of the pre-adjudication evidence in the record. In other

words, Plaintiff has not presented any plausible argument that would allow the court to reasonably

conclude that the October 2020 records show a deterioration occurring between March 30, 2020 (the

fourth hospitalization) and the May 28, 2020 hearing decision. To the extent the October 2020

records are demonstrative of a worsening of her conditions *after* the hearing decision, they do not

relate back and are more properly the subject of a new application. Accordingly, a remand to

consider these records is not warranted.

### 3. Step Four Finding

Plaintiff's final assignment of error argues that the ALJ impermissibly considered her

ability to engage in substantial gainful activity (SGA), *prior* to the alleged onset date, to find that

she could perform her past relevant work *after* the alleged onset date. (R. 14, PageID# 781-783).

This final assignment of error suffers from two fatal shortcomings. First, Plaintiff's brief on

this claim in entirely bereft of a single citation to any authority—case law, regulations, social

security rulings, statutes, or otherwise—that supports her assertion that a remand is necessary.

The second and even more significant shortcoming is that Plaintiff's brief misinterprets the

ALJ's decision. Plaintiff's brief asserts as follows:

> **ALJ Ashford used the fact that Nicole had earnings that rose to SGA levels
> as a basis to support his contention that she was capable of still doing that
> job, But the ALJ failed to provide discussion as to why someone's abilities to
> have SGA earnings before their claimed disability onset date could be
> support that they are still able to perform that job after they claim to be
> disabled**. This attempt to bolster his reasoning for a finding that Nicole could still
> perform past relevant work in light of four intervening hospitalizations due to
> mental health instability, and a claimed disability that arose post SGA earnings is
> not supported by substantial evidence.

(R. 9, PageID# 782) (emphasis added).

18

Plaintiff, however, does not cite to any portion of the ALJ's decision that supports the contention that the ALJ utilized Plaintiff's SGA earnings for such a purpose. The court has reviewed the ALJ's Step Four and Five findings (Tr. 25-27), and finds no indication the ALJ utilized Plaintiff's past work as described. To the contrary, the ALJ merely cited Plaintiff's 2018 earnings as a small products assembler to find that "this work constituted past relevant work as it was performed within the last 15 years, it lasted long enough for the claimant to learn how to do the job, and the claimant earned wages from the job at the substantial gainful activity level" (Tr. 25). Plaintiff's attempt to recast the ALJ's decision as a circular opinion finding the ability to work prior to the alleged onset as evidence of an ability to work after the alleged onset date is not based on a reasonable reading of the decision.

Plaintiff also suggests that her former employer "afforded her great accommodations" such as "work[ing] from home, away from co-workers." (R. 14, PageID# 782). She contends working from home was an "accommodation" that was not afforded other employees working for the same employer during the same time period. *Id*. However, Plaintiff cites no evidence of record to support her assertion that working from home was an accommodation rather than the norm for her previous employer. Step Four is a two-step inquiry where an ALJ first considers whether the claimant has the RFC to perform the functional demands and duties of a past job *as actually performed* by the claimant, and, if not, then proceeding to determine whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *See, e.g., Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 557 (6th Cir. 1995). Here, the VE testified that Plaintiff could perform her past job as she actually performed it. (Tr. 58).

Nevertheless, assuming for the sake of argument only that Plaintiff could not perform her

19

past relevant work and that the ALJ erred at Step Four of the sequential evaluation, the ALJ also found that "claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 26-27). The decision identified three other "representative occupations" that Plaintiff could perform—the same three identified by the VE in response to a hypothetical posed by the ALJ that mirrored the ultimate RFC adopted in the decision. (Tr. 26-27). Plaintiff has not challenged this alternate Step Five finding in any manner. Thus, she has not presented any argument contrary to a determination that even if the court were to find the ALJ's Step Four analysis flawed, such error would constitute "harmless error" because no infirmity is identified concerning the ALJ's Step Five finding. Stated another way, given the ALJ's unchallenged Step Five determination, any error regarding Plaintiff's past relevant work would be rendered harmless. "It is thus well-established that if an ALJ makes additional findings at step five that are supported by substantial evidence, any error at step four is harmless." *Michael v. Commissioner of Social Security*, 2018 WL 3490822, at *6 (S.D. Ohio Jul. 20, 2018); *see also Timsina v. Saul*, No. 19-cv-1262-LM, 2020 U.S. Dist. LEXIS 165599, at *16 (D.N.H. Aug. 17, 2020) ("any error in making alternate step four and step five findings is harmless where step five finding is supported by substantial evidence") (citations omitted).

Therefore, the second assignment of error is without merit.

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*

David A. Ruiz
United States District Judge

Date: March 25, 2022